**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DAMON JOSIAH HOUSTON | ) |
| | ) |
| Plaintiff, | ) |
| | )   No. 4:20-cv-00291-JAR |
| | ) |
| | ) |
| CORIZON HEALTH CARE, et al. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Reconsideration, (ECF No. 31), Defendant's Motion for Summary Judgment, (ECF No. 23), and Defendant's Motion for Extension. (ECF No. 34). Plaintiff Damon Josiah Houston ("Plaintiff"), an inmate incarcerated at the Potosi Correctional Center ("PCC"), initially brought this pro se action pursuant to 42 U.S.C. § 1983 against Defendants Corizon Health Care, Dr. William D. McKinney, Dr. Carl Doerhoff, Tymber Taylor, and Dr. Thomas K. Bredeman ("Dr. Bredeman"). (ECF No. 1). The Court ordered Plaintiff to file an amended complaint in light of deficiencies with his initial complaint. (ECF No. 7). In Plaintiff's amended complaint, he alleged claims of deliberate indifference to his serious medical needs against Dr. Bredeman and Tymber Taylor in both their official and individual capacities. Plaintiff's amended complaint did not allege claims against any other Defendants. This Court dismissed Plaintiff's claims against Taylor and Plaintiff's official capacity claims against Dr. Bredeman. (ECF No. 9). Only Plaintiff's individual capacity claim against Dr. Bredeman remains.

1

Plaintiff alleges Dr. Bredeman was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because he did not order a surgical consult for his testicular hydrocele. Dr. Bredeman moved for summary judgment on the grounds that Plaintiff did not exhaust his administrative remedies. (ECF No. 23). Plaintiff moved the Court to appoint an independent medical expert. The Court denied the motion and Plaintiff moved for reconsideration. (ECF No. 31). Defendant then moved for an extension of time to file any further dispositive motions. (ECF No. 34). For the reasons set forth below, the motions will be denied.

## I.   Background[1]

The grievance procedure for the Missouri Department of Corrections ("MDOC") consists of three steps defined in policy D5-3.2 "Offender Grievance," effective January 1, 2015. (SUMF at ¶ 2). First, the inmate must file an Informal Resolution Request ("IRR") within 15 days from the alleged incident. The complaint may be resolved by discussion or the grievance officer will investigate and develop a proposed response. Informal resolution requests should be responded to within 40 days of receipt. Id. at ¶ 4.

Second, if the inmate's grievance is not resolved at the informal level, he or she may proceed to the second step and file a formal grievance. A formal grievance must be filed within seven days after the offender receives the response on the informal resolution request form. If the offender fails to respond, the complaint is deemed abandoned. Id. at ¶ 6. The grievance officer should respond to offender grievances within 40 days of receipt. Id. at ¶ 4. Third, if the grievance

---

[1] The facts are taken from Defendant's Statement of Uncontroverted Material Facts, ("SUMF", ECF No. 25), unless otherwise noted. Although Plaintiff did not file a response to Defendant's SUMF, in his Motion in Response to Defendant's Motion for Summary Judgment, (ECF No. 28), he contends that he did exhaust his administrative requirements by filing and exhausting PCC-19-999. In support of this contention, Plaintiff attached grievance PCC-19-999. Plaintiff's response is consistent with Defendant's SUMF.

2

is not resolved at the formal level, the inmate must file an appeal within seven calendar days. An appeal response is provided within 100 days of receipt. Id. at ¶ 7. If the inmate does not receive a response within the time limit at any stage of the process, the inmate may move to the next stage of the process by notifying the grievance officer. A grievance is not considered exhausted until the inmate completes all three steps of the grievance procedure. Id. at ¶ 9.

Plaintiff submitted the following grievances at PCC between April 1, 2019 and September 11, 2020: PCC-19-617, PCC-19-999,[2] PCC-20-326, PCC-20-344, PCC-20-399 received June 4, 2020, and PCC-20-399 received September 4, 2020.[3] Id. at ¶¶ 11-16. Plaintiff initiated PCC-19-617 on June 17, 2019. In that grievance, Plaintiff complained that he did not receive a surgical consult for his right testicular hydrocele. Id. at ¶ 11. No response was issued to the IRR; the officer assigned to handle the case lost the grievance. (ECF No. 25-4 at 18). Pursuant to the MDOC policy, Plaintiff had a seven-day window in which he could file a formal grievance—between July 27, 2019 and August 3, 2019. Plaintiff did not do so and PCC-19-617 was deemed abandoned. (SUMF at ¶ 11).

Plaintiff submitted IRR PCC-19-999 on October 28, 2019. He complained that IRR PCC-19-617 was not properly documented. Moreover, he requested "That I be allowed to go to the next stage now and/or get the treatment I need for my Hydrocele approved." (ECF No. 28-1 at 5). On November 21, 2019, a response was issued, noting that Plaintiff was provided with the opportunity to file a second IRR about his testicular hydrocele and refused to accept it. Plaintiff filed a formal

---

[2] Dr. Bredeman occasionally refers to "PCC-19-199" as the grievance in which Plaintiff complained "that IRR PCC-19-617 had not been documented properly." (ECF No. 24 at 6). There is no record of Plaintiff making a grievance numbered PCC-19-199. Instead, Plaintiff complains that IRR PCC-19-617 was not properly documented in grievance PCC-19-999. Accordingly, the Court will construe Dr. Bredeman's references to PCC-19-199 as references to PCC-19-999.
[3] Two of Plaintiff's grievances are numbered "PCC-20-399." For clarity, the Court will refer to the grievances as PCC-20-399 received June 4, 2020 and PCC 20-399 received September 4, 2020.

grievance on November 25, 2019, which was denied on November 27, 2019. On December 5, 2019, Plaintiff filed a grievance appeal, which was denied, thereby completing the three-step grievance process. (SUMF at ¶ 12). In a memorandum related to PCC-19-999, a grievance officer wrote:

> I informed Offender Houston that IRR PCC19-617 was submitted to Case Manager Eddleman. Mrs. Eddleman has resigned after he turned it in, prior to me becoming the Case Manager over Housing Unit 5. The IRR was lost and there were no copies of it. I offered for him to file another IRR and he refused to. When I gave him a Grievance Form all he put on it was "Review my IRR that I run in back on 6-13-19." I cannot process an IRR that I do not have any information on.

(ECF No. 25-4 at 18).

Plaintiff filed this complaint on February 20, 2020, after which he filed two more IRRs related to his hydrocele: IRR PCC-20-399 received June 4, 2020 and IRR PCC-20-399 received September 4, 2020. Plaintiff's remaining grievances relate to the mail room staff.

## II.   Motion to Reconsider

Plaintiff moved the Court to reconsider its denial of his motion to appoint a medical expert. The Federal Rules of Civil Procedure do not mention motions for reconsideration. However, the Eighth Circuit Court of Appeals has held that a motion to reconsider a non-final order should be construed as a Rule 60(b) motion for relief from judgment or order. See Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999). The Court will construe Plaintiff's motion for reconsideration as a motion pursuant to Rule 60(b).

Rule 60(b) allows relief from an order due to:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

4

Fed. R. Civ. P. 60(b); see also Elder–Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006). Relief under Rule 60(b) is an "extraordinary remedy" that is "justified only under 'exceptional circumstances.'" Prudential Ins. Co. of Am. v. Natl. Park Med. Ctr., Inc., 413 F.3d 897, 903 (8th Cir. 2005) (quoting Watkins v. Lundell, 169 F.3d 540, 544 (8th Cir. 1999)). Further, "[r]elief is available under Rule 60(b)(6) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." Harley v. Zoesch, 413 F.3d 866, 871 (8th Cir. 2005). The Rule 60(b)(6) catch-all provision is not a vehicle for setting forth arguments that were made or could have been made earlier in the proceedings. See Broadway, 193 F.3d at 989–90.

Plaintiff's Rule 60(b) motion raises the same arguments as his initial motion to appoint an expert. In both motions, Plaintiff argues the Court will benefit from the appointment because an expert will provide an unbiased opinion on the effects of Plaintiff's medical treatment. Plaintiff's motion does not point to a mistake, newly discovered evidence, fraud, or other reasons that could justify reconsideration. Plaintiff is not entitled to reconsideration.[4]

---

[4] Were the Court to consider Plaintiff's motion, it would nevertheless conclude that it is not appropriate to appoint a medical expert in this case. Plaintiff relies on Smith v. Jenkins in support of his motion. 919 F.2d 90 (8th Cir. 1990). In Smith, the Eighth Circuit held the district court erred in failing to appoint a medical expert because the record did not contain sufficient facts to determine whether the plaintiff's eighth amendment rights were violated. Id. at 93. The Eighth Circuit was "particularly troubled by the absence of [plaintiff's] medical records from the court record." Id. The plaintiff was never provided with his medical records. The district court in Smith ruled against the plaintiff on the merits while Dr. Bredeman moves for summary judgment based on Plaintiff's failure to exhaust. Moreover, Plaintiff has access to at least some of his records; Plaintiff attached several pages of his medical records to his Rule 60(b) motion. (ECF No. 31 at 7-9). The circumstances of this case do not justify appointing an expert pursuant to Rule 706 at this time. United States Marshals Serv. v. Means, 741 F.2d 1053, 1059 (8th Cir. 1984) (court should appoint an expert witness only under compelling circumstances) (subsequent history omitted).

### III.   Motion for Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "In determining whether the grant of a motion for summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party." Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 618 (8th Cir. 1988). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. Armour & Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones v. Bock, 549 U.S. 199, 219 (2007). The PLRA's exhaustion requirement is "mandatory." Woodford v. Ngo, 548 U.S. 81, 85 (2006).

The PLRA requires inmates to: (1) *fully and properly* exhaust their administrative remedies *as to each claim* in the complaint; and (2) complete the exhaustion process before filing an action in federal court. Jones, 549 U.S. at 211, 219-20, 223-24; Woodford, 548 U.S. at 93-95; Burns v. Eaton, 752 F.3d 1136, 1141-42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Woodford, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Accordingly, the MDOC's three step grievance procedure defines the boundaries of exhaustion here.

Dr. Bredeman argues that he is entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies with respect to Plaintiff's claims related to the decision not to authorize a surgical consult for Plaintiff's hydrocele. Plaintiff's first grievance complaining that Dr. Bredeman denied his surgical consult is PCC 19-617. The MDOC lost the grievance and did not respond to it. Plaintiff failed to initiate the next step in the grievance process and the MDOC deemed PCC 19-617 abandoned.

Plaintiff then filed PCC 19-999. Dr. Bredeman admits that Plaintiff exhausted his administrative remedies with respect to PCC 19-999, but argues PCC 19-999 has not exhausted the administrative remedies for Plaintiff's claims against him because the grievance regarded the failure to document IRR PCC-19-617. However, Plaintiff did request treatment for his hydrocele in PCC 19-999; Plaintiff asked either that the MDOC allow him to reinstate PCC 19-617—which the MDOC lost—or that he receive treatment for his hydrocele. PCC 19-999 gave the MDOC a "fair and full opportunity to adjudicate" Plaintiff's claims against Dr. Bredeman related to the hydrocele. Woodford, 548 U.S. at 90. See also Jones v. Engle, No. 4:18 CV 984 RWS, 2020 WL

4732047, at *2 (E.D. Mo. Aug. 14, 2020) (finding the plaintiff exhausted administrative remedies despite not specifically addressing the wrongdoing of the defendant because the grievance gave the MDOC the opportunity to adjudicate the claims against the defendant). Accordingly, Plaintiff's administrative remedies are exhausted.

### IV.     Motion for Extension

Under the Case Management Order, dispositive motions are due by May 20, 2021. (ECF No. 17). Dr. Bredeman asks for an extension of 21 days after this Court rules on his Motion for Summary Judgment to file any further dispositive motions. The parties have more than 21 days from the date of this motion to file any further dispositive motions. As such, the Court will deny the motion for extension.

### V.     Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [23] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for reconsideration [31] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for extension [34] is **DENIED**.

Dated this 26th day of April, 2021.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**